**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**CHARLES L. MARTIN**
Martin & Martin
Boonville, Indiana

ATTORNEYS FOR APPELLEE:

**D. CHAD JOHNSON**
Warrick County DCS
Boonville, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF L.P., D.P., & C.H., (Minor Children), | ) ) ) ) |
| and | ) ) |
| J.P. (Mother), | ) ) |
| Appellant-Respondent, | ) ) |
| vs. | ) No. 87A05-1212-JT-622 ) |
| THE INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) |
| Appellee-Petitioner. | ) ) |

APPEAL FROM THE WARRICK COUNTY SUPERIOR COURT
The Honorable Keith A. Meier, Judge
Cause Nos. 87D01-1106-JT-160
87D01-1106-JT-161
87D01-1106-JT-162

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

Case Summary and Issue

J.P. ("Mother") appeals the trial court's termination of her parental rights as to L.P., D.P., and C.H. (the "Children").[1] Mother presents one consolidated and restated issue on appeal: whether there was sufficient evidence to support the termination of her parental rights. Concluding there was sufficient evidence, we affirm.

Facts and Procedural History

In March 2010, the Indiana Department of Child Services ("DCS") removed the Children from Mother's home following an allegation of Mother's drug use in the presence of the Children, and a subsequent drug test in which Mother tested positive for methamphetamine, amphetamine, and marijuana. All three children have been living in foster care since being removed from Mother's home. At a hearing, Mother admitted to the allegations in the Child in Need of Services ("CHINS") petition, and the Children were determined to be CHINS. In May 2010, DCS was ordered to supervise visitation between

---

[1] Mother has one other, older child who was not the subject of this termination or the underlying Child in Need of Services case. Additionally, neither the father of L.P. and D.P., nor the father of C.H., participate in this appeal; both fathers voluntarily relinquished their respective parental rights to the Children.

Mother and the Children, and Mother was ordered to participate in various treatment programs and services, including random drug screens, completing mental health therapy, cooperating with DCS, and participating in supervised visitation.

In July 2010, the trial court conducted a review hearing and found that Mother had partially cooperated with DCS and ordered Mother to participate in random drug screens and complete recommended treatment. In November 2010, at a permanency hearing, the trial court found that Mother was making progress with mental health treatment but she continued to test positive for drugs.[2] In April 2011, at a review hearing, the court found that Mother had completed a substance abuse treatment program, but that Mother was not submitting to drug screens and the court declined to allow Mother unsupervised visitation until she had a series of clean drug screens.

In June 2011, DCS filed a petition to terminate Mother's parental rights to the Children. In September 2011, at a review hearing, the court again ordered Mother to participate in drug screens. The court also ordered the Court Appointed Special Advocate ("CASA") to make unannounced visits during Mother's visitation time with the Children and to report on her findings.

In December 2011, the trial court approved a plan to terminate parental rights and found that Mother continued to test positive for drugs and that she was still under supervised visitation with the Children. In July 2012, DCS filed an amended petition to terminate parental rights. Following a fact finding hearing in September 2012, the court issued

---

[2] Aside from the initial drug test when the Children were removed from Mother's home, all of Mother's subsequent positive drug tests were positive only for marijuana.

findings of fact and conclusions of law in November 2012 and ordered that Mother's parental rights be terminated as to the Children. This appeal followed. Additional facts will be supplied as necessary.

## Discussion and Decision

### I. Standard of Review

In determining whether the evidence is sufficient to support a judgment terminating parental rights, we neither reweigh the evidence nor judge the credibility of the witnesses. In re D.J., 755 N.E.2d 679, 683 (Ind. Ct. App. 2001), trans. denied. We consider only the evidence favorable to the judgment and the reasonable inferences to be drawn therefrom. Id. When reviewing the findings of fact and conclusions of law upon which a termination of parental rights is premised, we engage in a two-tiered standard of review: we first determine whether the evidence supports the findings, and second, whether the findings support the judgment. Id. We will reverse only upon a showing of clear error. Id. A finding is clearly erroneous when there are no facts or inferences drawn therefrom that support it. In re A.J., 877 N.E.2d 805, 815 (Ind. Ct. App. 2007), trans. denied. A judgment is clearly erroneous only if the findings of fact do not support the trial court's conclusions thereon, or the conclusions thereon do not support the judgment. Id.

In evaluating the circumstances surrounding the termination, the court must subordinate the interests of the parents to those of the child. R.G. v. Marion Cnty. Office, Dep't of Family & Children, 647 N.E.2d 326, 328 (Ind. Ct. App. 1995), trans. denied. Termination of parental rights is proper where the child's emotional and physical

4

development is threatened.  Id.  The trial court need not wait until the child is irreversibly harmed such that his physical, mental, and social development is permanently impaired before terminating the parent-child relationship.  Id.

To determine whether a reasonable probability exists that the conditions justifying a child's continued placement outside the home will not be remedied, the trial court must judge a parent's fitness to care for her children at the time of the termination hearing and take into consideration evidence of changed conditions.  In re D.D., 804 N.E.2d 258, 266 (Ind. Ct. App. 2004), trans. denied.  However, the trial court must also evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child.  Id.

## II.  Sufficiency of the Evidence

In order for Mother's parental rights to be terminated, DCS needed to prove by clear and convincing evidence:

(A) that one (1) of the following is true:
> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
> (iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:
> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

5

        (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
        (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
    (C) that termination is in the best interests of the child; and
    (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).

Mother contests the trial court's conclusions that: the conditions that resulted in the Children's removal will not be remedied; the continuation of the parent-child relationship poses a threat to the Children; and that termination is in the best interests of the Children. Mother also, very briefly, argues that DCS does not have a satisfactory plan in place for the Children. Mother's overall argument focuses on the fact that, while she tested positive for methamphetamines, amphetamines, and marijuana at the time of the removal, she has since only tested positive for marijuana. She also indicates that her marijuana use was the sole factor that led to the termination of her parental rights. On the contrary, the trial court listed facts beyond her drug use, and in our review of this case we determine that the record supports the trial court's findings and those findings support the trial court's termination of Mother's parental rights.

The trial court here produced lengthy findings of fact and conclusions of law. Some of the relevant facts found by the trial court, and supported by the record, include the following: there has been prior DCS involvement with Mother and the Children, including a substantiated allegation that Mother punched her five-year-old daughter in the face in 2004, an investigation regarding lack of supervision in 2004, and a substantiated lack of supervision in 2005; in the current case, following the removal of the Children, Mother

6

submitted to DCS a drug screen report on which the date had been altered, Mother failed to contact DCS following removal of the Children, and Mother failed to provide clothing and medication for the Children after they were removed; an addictions assessment in May 2010 noted a good prognosis if Mother abstained from drug use; between April 2010 and February 2011 Mother failed to submit to regular drug screens; Mother testified to completing a substance abuse program but the facility had no record of a patient by Mother's name; Mother admitted that she continued to use marijuana, and tested positive as recently as June and July 2012, on dates coinciding with her weekly supervised visits with the Children; after initial treatment, which was followed by marijuana use, Mother did not initiate individual therapy for herself; Mother admitted that DCS had repeatedly communicated to her the importance of her sobriety; the Children were in her care and custody when she was under the influence of marijuana; Mother has not participated in school conferences; Mother has been non-compliant with services, treats the Children as adults, and fails to set boundaries; two of the children are in a foster home together, and the third child is in a separate therapeutic foster home as a result of several medical conditions and destructive behavior; Mother was not aware of all of the Children's diagnoses until the day of the fact finding hearing; Mother did not exercise all of her visitations with the Children and her visits were not consistent; during a period where visitations were at Mother's home, Mother failed to provide meaningful interaction, discipline, or structure; Mother's visits were moved to DCS in October 2011 and that remained unchanged; Mother never progressed beyond supervised visits in thirty months, and at the time of the hearing was visiting the Children for one hour

7

per week; several problems were noted with the visits and Mother's interactions with the Children, including a need for the Family Case Manager to intervene at least once during each visit; if the Children were returned to Mother, her continued drug use could result in future criminal liability and another removal of the Children; and both the Family Case Manager and the CASA believe it is in the Children's best interest for parental rights to be terminated.

Mother does not contest any of the specific findings of the trial court, but instead argues that the court's judgment is not supported by the findings. We disagree. As for her drug use, Mother cites to In re J.L., 919 N.E.2d 561, 564 (Ind. Ct. App. 2009), but apparently fails to realize that in J.L. we affirmed the determination that the child was a CHINS where the mother used drugs while the child was asleep but nonetheless in her care and custody. Similarly, the court here found that Mother was under the influence of marijuana while the Children were in her care and custody, and that she had recently tested positive in a drug screen coinciding with her visitation with the Children. In addition to Mother's continued drug use, the court found numerous facts relating to Mother's visits with the Children and her inability to appropriately interact with or parent them. In total, the court's findings support the conclusion that the conditions that led to the Children's removal would not be remedied and/or that continuation of the parent-child relationship would pose a threat to the Children.[3]

---

[3] Because the statute is written in the disjunctive, the court needed only to find that one subsection of Indiana Code section 31-35-2-4(b)(2)(B) was met. The court found that both (i) and (ii) were met. Because only one subsection is necessary, we do not distinguish between the two here, but hold that there was sufficient evidence to support a finding on at least one of the subsections.

As for the best interests of the child factor, while the Children here have stated that they wish to go back to Mother's home, that is not unexpected and not the determining factor. The court's findings as noted above also support the trial court's conclusion that termination would be in the best interest of the Children. In particular, the court's conclusion is supported by fact that both the Family Case Manager and the CASA believed that termination was in the Children's best interests. See In re A.B., 887 N.E.2d 158, 170 (Ind. Ct. App. 2008) ("[T]he recommendations of a child's caseworker and [guardian ad litem] that parental rights should be terminated support a finding that termination is in the child's best interests.").

Finally, while Mother does not make much of an argument as for why DCS's plan for the Children is not satisfactory, she does mention that no adoptive parents have already been approved by DCS. However, the plan for the Children here is adoption, and we have noted previously that adoption is a generally satisfactory plan. Castro v. State Office of Family & Children, 842 N.E.2d 367, 373 n.2 (Ind. Ct. App. 2006), trans. denied.

## Conclusion

Concluding there is sufficient evidence to support the trial court's termination of Mother's parental rights as to the Children, we affirm.

Affirmed.

RILEY, J., and KIRSCH, J., concur.